# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――

**NELSON POLANCO,**

                              **Petitioner,**

   **v.**                                    **Civil Action No.**
                                             **9:08-CV-1283 (GLS)**

**DAVID ROCK,**

                              **Respondent.**

―――――――――――――――――――――――――

**APPEARANCES:**

**FOR PETITIONER:**

**NELSON POLANCO, 03-A-0259**
 Petitioner, *pro se*
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

**FOR RESPONDENT:**

HON. ANDREW M. CUOMO              THOMAS B. LITSKY, ESQ.
Office of the Attorney General     Ass't Attorney General
120 Broadway
New York, New York 10271

**GARY L. SHARPE, U.S. District Judge**

## DECISION AND ORDER

       Petitioner Nelson Polanco is an inmate in the custody of the New

York State Department of Correctional Services ("DOCS") at Great

Meadow Correctional Facility.  He was convicted in Albany County Court, by a jury, of second degree attempted murder, second degree kidnapping, first degree robbery (2 counts), first degree assault, second degree robbery, first degree criminal use of a firearm, and third degree criminal possession of a weapon for his role in the abduction, robbery and shooting of Angel Smith ("the victim").  He is presently serving an aggregate determinate term of fifty years in prison.  *See* Dkt. No. 1 at 2-3; Dkt. No. 8, Respondent's Memorandum of Law ("Resp't Mem.") at 2 & n. 1.

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that: (1) the evidence was insufficient to sustain his conviction on all charges because the victim initially identified someone else as the shooter; (2) the evidence was insufficient to sustain his conviction for kidnapping because there was no proof that Petitioner participated in the abduction  of the victim at the location specified in the indictment; (3) counsel was ineffective (Grounds Four and Five); and (4) the trial court improperly denied his motions to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 without hearings.  *See* Dkt. No. 1 at 6-10, 10-a; Memorandum of Law ("Mem.") at

4-26.  For the reasons that follow, the petition is denied and dismissed.

## I.      RELEVANT BACKGROUND

The Supreme Court of New York, Appellate Division, Third

Department, briefly summarized the facts of this case:

> Sometime around noon on the day in question, an individual by the name of Tony Kearney, also known as "Lex," was "jumped" by two unknown young boys. Shortly thereafter, Kearney, [Elias] Estrella, [Petitioner] and Edwin Rosado drove around in search of these "kids." After observing Kearney's two assailants riding in a car with the victim, the foursome drove to a nearby residence, retrieved a gun and went back out in search of them, to no avail.
>
> At approximately 10:00 p.m. that night, Estrella and Kearney approached the victim in a vacant lot while [Petitioner] and Rosado waited in a vehicle. Kearney pointed the previously-retrieved gun at the victim and she was forced into the vehicle. They then proceeded to a nearby park where the victim was ordered out of the vehicle and was accused by Kearney of setting him up to be assaulted earlier that day. The victim repeatedly denied any involvement in the earlier incident. Kearney was then content to let the victim go free and she, in fact, began to walk away.
>
> [Petitioner], however, objected to her release; thus, at [Petitioner's] insistence, Kearney again pointed the gun at the victim and directed her back into the vehicle. At this time, [Petitioner] repeatedly told the others that the victim "[had] to go," that Kearney "[had] to shoot her" and that, if Kearney was not going to "do it," he would. [Petitioner] also spoke directly to the victim and told her that "she [had] to go." At [Petitioner's] request, Kearney passed the gun to him. The victim was again directed out of the vehicle at gunpoint. In

3

response to the victim's inquiry as to why she had to exit the vehicle, [Petitioner] remarked that he did not want to "shampoo [its] seats in the morning."

Clinging to Estrella, the victim got out of the car at which time Kearney and [Petitioner] began yelling at him to "go in her . . . pockets." The victim herself handed over the small amount of cash on her person while Estrella nevertheless went through her pockets. As Estrella pulled away from the victim, who continued to cling to him for protection, [Petitioner] shot her in the head. This first bullet immediately blinded her. As she lay on the ground, [Petitioner] fired approximately five more shots at her, including one to the chest.

After the men fled and despite her critical injuries, the victim was able to stagger away from the shooting scene where she was ultimately assisted by two bystanders. In the ambulance on route to the hospital, the victim told police that "Lex" (i.e., Kearney) had shot her. Even though she knew this was not accurate, she did so because she did not know the name of anyone else involved and believed, ultimately correctly so, that if the police located Kearney then they would also locate the others, including [Petitioner]. As a result of the barrage of bullets fired at her by [Petitioner], the victim suffered from, among other injuries, shoulder, jaw and skull fractures, a collapsed lung and permanent blindness.

*People v. Polanco*, 13 A.D.3d 904, 905-06 (3d Dep't 2004). *See* Trial Tr. at 48-82, 84-93, 123-35, 188-209, 217-77.

Petitioner appealed his conviction, arguing that (1) the evidence was insufficient to support any of the charges, and the verdict was against the weight of the evidence, because the People failed to prove he was the shooter; (2) the evidence was insufficient to establish his guilt of

4

kidnapping because there was no evidence that Petitioner participated in the abduction of the victim at the location specified in the indictment; and (3) the sentence was unduly harsh. *See* Dkt. No. 9, Ex. A, at 8-21. On December 23, 2004, the Appellate Division affirmed. *Polanco*, 13 A.D.3d at 904-907. *See* Dkt. No. 9, Ex. C. Leave to appeal to the New York Court of Appeals was denied on February 28, 2005. *Polanco*, 4 N.Y. 3d 802 (2005); Dkt. No. 9, Ex. E.

Petitioner then filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on or about February 16, 2006, in which he argued that trial counsel was ineffective for: (1) failing to cross-examine the victim; (2) failing to permit Petitioner to testify; (3) failing to request that the kidnapping charge be dismissed; and (4) failing to conduct an appropriate summation. Dkt. No. 9, Ex. F. The motion was denied on April 14, 2006. *Id.* at Ex. G. The Appellate Division, Third Department, granted leave to appeal on June 22, 2006. *Id.* at Ex. I.

In a decision dated June 12, 2008, the Appellate Division affirmed the denial of Petitioner's section 440 motion, finding that "[m]ost of the allegations of ineffective assistance of counsel pertain to claimed errors

that could have been raised in the context of the direct appeal and are therefore not the proper subject of a CPL 440.10 motion." *People v. Polanco*, 52 A.D.3d 947, 947 (3d Dep't. 2008) (citing CPL § 440.10(2)(c)); *see* Dkt. No. 9, Ex. O.  The Appellate Division also rejected Petitioner's claim that counsel failed to advise him of the right to decide whether to testify because the record showed that Petitioner was aware of his right to testify, chose not to do so, and counsel and Petitioner had "extensive and repeated conversations about the decision to rest without calling any witnesses." *Id.* (citing CPL § 440.30(4)(c)).  The New York Court of Appeals denied leave to appeal on September 18, 2008. *See Polanco*, 11 N.Y.3d 793 (2008); Dkt. No. 9 at Ex. Q.

Petitioner filed a second section 440 motion on or about May 24, 2007, in which he argued that trial counsel failed to (1) investigate a material witness for the defense, Reverend Keith Davey; and (2) failed to call Davey to support the defense that Petitioner lacked criminal intent. Dkt. No. 9, Ex. R. Petitioner's motion was denied on July 12, 2007.  *Id.* at Ex. S. The court found that, "[a]ssuming that counsel was aware of the existence of this proposed witness and the substance of the proposed testimony, counsel's decision not to call the witness was a strategic

decision and there is no basis to find this decision amounted to ineffective assistance of counsel." *Id.* at 2-3.  The court also concluded that Petitioner received meaningful representation, and that counsel pursued a "reasonable defense strategy." *Id.* at 3. The Appellate Division denied leave to appeal on August 29, 2007.  *Id.* at Ex. U.

This action followed.

## II.    DISCUSSION

### A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[1] *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)(citing 28 U.S.C. §§2254(d)(1), (2)); *Hawkins v. Costello,* 460 F.3d 238, 242-43 (2d Cir.

---

[1]      "Clearly established federal law" in this context "refers only to the holdings of the Supreme Court." *Rodriguez v. Miller*, 537 F.3d 102, 106 (2d Cir. 2008) (citing *Williams v. Taylor,* 529 U.S. 362, 412 (2000)).

2006), *cert. denied* 549 U.S. 1215 (2007).

A state court decision violates the "contrary to" clause of section 2254(d)(1) when it "reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts." *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000)). A federal habeas court may only grant the writ under the "unreasonable application" clause of the section when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way." *Id.* at 74 (citing *Williams*, 529 U.S. at 413). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro,* 550 U.S. at 473. Federal habeas courts are also required under AEDPA "to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' " *Id.* (citing § 2254(e)(1)).

### B.  Sufficiency of the Evidence

Petitioner argues in Ground One of his petition that the evidence was insufficient to sustain his convictions on any of the charged crimes because the victim initially identified Kearney as the shooter, and her trial testimony that Petitioner was the shooter was therefore unworthy of belief.  *See* Dkt. No. 1 at 6. Petitioner also argues that the victim's explanation for why she identified Kearney as the shooter - because he was the only person she knew by name and she assumed that if the police found him, they would find the others involved - was incredible.  *Id.*

Petitioner raised these claims on direct appeal.  *See* Dkt. No. 9, Ex. A, at 8-14. He also argued that Estrella's testimony was incredible because he was protecting Kearney and was getting a plea deal in exchange for his cooperation, and that Estrella and the victim's testimony that Petitioner was the shooter was a "coordinated fabrication." *Polanco*, 13 A.D.3d at 906.   The Appellate Division rejected these claims, finding that the evidence was sufficient to support each of Petitioner's convictions.  *Id.* at 906. The court also stated that it reviewed the victim's and Estrella's testimony, and was "unable to conclude that such testimony was incredible as a matter of law."  *Id.* That decision is entitled

9

to AEDPA deference, and is supported by the record.

A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very heavy burden." *United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001)(per curiam); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). A habeas petitioner claiming that there was insufficient evidence supporting a conviction is thus entitled to relief under 28 U.S.C. § 2254 only if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see Schlup v. Delo*, 513 U.S. 298, 323 n. 38 (1995). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993)(emphasis in original). The habeas court is required to consider the evidence in the light most favorable to the prosecution, and draw all

inferences in its favor. *Jackson,* 443 U.S. at 319.

In this case, Petitioner does not allege that the evidence was insufficient to establish each element of the crimes for which he was convicted.   Instead, Petitioner argues that the proof was insufficient to show that he was either the perpetrator of the charged crimes, or an accessory.  Petitioner claims that because the victim initially identified Kearney as the shooter, her later testimony (and that of Estrella) identifying Petitioner as the shooter should not have been believed. Dkt. No. 1 at 6.

The victim and Estrella both identified Petitioner at trial as the person who directed the continued detention and robbery of the victim, and as the person who shot the victim.  Trial Tr. at 60-71, 241-48. Although the victim did not see who fired the shots, she testified that it was Petitioner who threatened to shoot her.  While inside the vehicle, Petitioner insisted that the victim "[had] to go," that Kearney had to shoot her, and that if Kearney would not, Petitioner would. *Polanco*, 13 A.D.3d at 905; Trial Tr. at 59-63; 239-44. Kearney gave the loaded gun to Petitioner, who pointed it at the victim and ordered her out of the vehicle because he did not want to "shampoo [its] seats in the morning." *See*

11

*Polanco*, 13 A.D.3d at 905; Trial Tr. at 64.  Estrella also testified that

Kearney passed the gun to Petitioner, that Petitioner and Kearney

directed Estrella to through the victim's pockets, and that Petitioner had

the gun in his hand after the first shot was fired.  Trial Tr. at 242-47.

Estrella also saw Petitioner continue to shoot the victim as she lay on the

ground. *Id.* at 247-48. As the Appellate Division found, this evidence was

sufficient to establish that Petitioner committed each of the crimes for

which he was convicted.

As the Appellate Division further found, the victim explained that

she initially identified Kearney as the shooter because he was the only

person in the vehicle that she knew by name, and hoped that if the police

found Kearney, they would find all of the men involved in her shooting.

*Polanco*, 13 A.D.3d at 906; *see* Trial Tr. at 78-79.  The jury was entitled

to believe that testimony. *Edwards v. Jones,* 720 F.2d 751, 755 (2d Cir.

1983) ("[t]he testimony of a single, uncorroborated eyewitness is

generally sufficient to support a conviction.")(quoting *United States v.*

*Danzey*, 594 F.2d 905, 916 (2d Cir.1979), *cert. denied* 441 U.S. 951

(1979)); *Horton v. Ercole*, 557 F. Supp. 2d 308, 323-24 (N.D.N.Y.

2008)("to the extent that Horton claims the proof was insufficient to show

he was the actual perpetrator, that claim also fails. Sealey and Simms both identified Horton as the shooter, and the jury was entitled to believe that testimony.")(internal citations omitted).  This court may not reassess the jury's finding of credibility. *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)(stating that "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues."); *Hogan v. West,* 448 F. Supp. 2d 496, 513 (W.D.N.Y. 2006) ("[T]his court is not free to second-guess the jury's credibility determinations."); *Huber v. Schriver,* 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001) ("[M]ost of petitioner's argument rests on the suggestion that the eyewitness testimony was not credible and should not have been given enough weight to result in his conviction.... However, under both the state law ... and federal law, issues of credibility, as well as the weight to be given to evidence, are questions to be determined by the jury.").

Additionally, Petitioner was charged with acting in concert with one or more of his co-defendants in the commission of all of the charged crimes, with the exception of the firearms offenses.  *See* Trial Tr. at 306-330.  Penal Law § 20.00 provides that "[w]hen one person engages in

13

conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."  N.Y. PENAL LAW § 20.00.

Under this theory, even if Kearney was the shooter, Petitioner could still be properly convicted because, by his words and actions, Petitioner shared a common purpose and intent with Kearney to commit the crimes for which he was convicted.  *Johnson v. Kirkpatrick*, No. 07-CV-6228, 2010 WL 1063736, at *6 (W.D.N.Y. Mar. 22, 2010)("Petitioner was at the site of the shooting, wearing a red and black plaid flannel coat and long gold chain with a medallion; that there were two shooters, and two types of bullets recovered from the scene of the shooting as well as from the victim's body; and, that various witnesses observed two men, one in a silver puffy coat and one in a red and black plaid flannel coat, shoot the victim multiple times. In the instant case, there was sufficient evidence for a jury to have found that Petitioner intended to cause the victim's death and that he acted in concert with Wearen in shooting the victim to death."); *Adams v. Mantello*, No. 00-CV-0931, 2002 WL 31409930, at *3

14

n. 2 (E.D.N.Y. Sept. 30, 2002)("First, there was sufficient evidence that

Adams was a shooter. Second, Adams was charged with murder in the

second-degree under a theory of accessorial liability. . . Whether or not

Adams was holding or fired a gun, there was sufficient evidence that he

joined with others in a concerted effort to kill Chauncey with the intention

of killing him over a drug dispute. There was also sufficient evidence that

he participated in the execution of this plan.").  The Appellate Division's

rejection of Petitioner's sufficiency claim was not contrary to or an

unreasonable application of clearly established Supreme Court

precedent, and this claim is denied and dismissed.

## C.    Sufficiency of the Evidence to Support the Kidnapping Conviction

In Ground Two of his petition, Petitioner claims that the evidence

was insufficient to support the kidnapping conviction because the

indictment specified that the victim was abducted "in front of 80-82

Morton Avenue," but the evidence did not show that Petitioner

participated in the initial kidnapping of the victim at that location. Dkt. No.

1 at 7. He further argues that, if the People's evidence is taken as true,

he did not become involved in the kidnapping until after Kearney initially

let the victim go, at a location different from that in the indictment. Dkt.

No. 1, Mem. at 20.

Petitioner raised this claim on direct appeal, and the Appellate Division rejected it, finding that the evidence was "legally sufficient to support each of [Petitioner's] convictions." *Polanco*, 13 A.D.3d at 906. That decision is entitled to AEDPA deference.

To sustain Petitioner's conviction for second degree kidnapping, the prosecution had to prove that Petitioner abducted the victim, i.e., that he restrained her with intent to prevent her liberation, by using or threatening to use deadly physical force. N.Y. PENAL LAW §§ 135.00(2); 135.20.[2] As previously noted, Petitioner was charged with acting in concert with Kearney and Edwin Rosado to kidnap the victim. *See* Dkt. No. 9, Ex. A, Appendix at A-6. Under a theory of accomplice liability, criminal liability is imputed for the conduct of another. Direct proof of an express agreement between Petitioner and his co-defendants is not required to show that Petitioner acted as a principal or as an accessory to a crime. *Martinez v. Breslin,* No. 07 Civ. 8671, 2009 WL 2244633, at & 6 (S.D.N.Y. July 28,

---

[2]     As relevant here, restrain means "to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful. A person is so moved or confined "without consent" when such is accomplished by (a) physical force, intimidation or deception[.]" N.Y. PENAL LAW § 135.00(1).

2009)(citing *Jones v. Keane*, 250 F. Supp. 2d 217, 238 (W.D.N.Y. 2002) and *People v. Alvarez*, 88 Misc.2d 709, 389 N.Y.S.2d 980, 987 (N.Y.Sup. Ct. 1976)). Intent may be inferred from the circumstances, including the actions of the accused, and may be proven by direct or circumstantial evidence. *Horton*, 557 F. Supp. 2d at 321; *People v. Price*, 35 A.D.3d 1230, 1231 (4th Dep't. 2006), *lv. denied* 8 N.Y.3d 926 (2007). *See In re Tatiana N.*, 899 N.Y.S.2d 21, 24 (1st Dep't. 2010)("the necessary knowledge and intent [to prove accessorial liability] need not be admitted directly or verbally acknowledged.  They may be established through the actions of the accused, based on the entire series of events.").

Viewed in the light most favorable to the prosecution, the evidence established that Petitioner, acting in concert with co-defendants Kearney, Rosado, and Estrella, restrained the victim at gunpoint. Petitioner was in the vehicle with Kearney and Estrella when Kearney and Estrella initially forced the victim into the vehicle at gunpoint at 80-82 Morton Avenue, and while the men drove a short distance to a nearby park, and while Kearney questioned her at gunpoint. *Id.* at 58-60; 239-41.  When Kearney let the victim go, Petitioner objected because she had seen the faces of the men in the vehicle, and instructed Kearney to bring her back to the

vehicle. *Id.* at 239-41. Petitioner then insisted that the victim "[had] to go,"

that Kearney had to shoot her, and that if he would not do it, Petitioner

would.  *See Polanco*, 13 A.D.3d at 905; Trial Tr. at 59-63; 239-244.

While still seated in the vehicle, Kearney passed the loaded gun to

Petitioner, who pointed it at the victim and ordered her out of the vehicle

because he did not want to "shampoo [its] seats in the morning." *See*

*Polanco*, 13 A.D.3d at 905; Trial Tr. at 64.

Considering the testimony of the victim and Estrella, and viewing

the evidence in the light most favorable to the prosecution, there was

sufficient evidence for a jury to have found that Petitioner intended to

kidnap the victim, and that he acted in concert with his co-defendants to

achieve that end.  *See Couser v. Zon*, No. 05-CV-1040, 2008 WL

2440709, at *11-12 (N.D.N.Y. Jun. 17, 2008)(evidence sufficient to

establish felony murder where there was co-conspirator testimony

indicating the petitioner's involvement in and agreement to conspiracy); *In*

*re Tatiana N*, 899 N.Y.S.2d at 24 ("Indeed, the mere act of blocking a

victim's path of retreat has been found to support a finding of accessorial

liability.").  Even if Petitioner's and his co-defendants's actions were not

planned before the incident, "the totality of the evidence permits only the

conclusion that [Petitioner] knowingly participated and continued to participate even after his companion's intentions became clear," supporting the jury's conclusion that Petitioner "shared a community of purpose" with his co-defendants. *Martinez,* 2009 WL 2244633, at *6 (quoting *People v. Allah*, 71 N.Y.2d 830, 832 (1988)) (internal quotations omitted).  Since the Appellate Division's determination that the kidnaping verdict was supported by sufficient evidence was neither contrary to, nor an unreasonable application of Supreme Court precedent, this claim is denied and dismissed.

### D.  Ineffective Assistance of Counsel

Petitioner claims in Grounds Three and Four of his petition that trial counsel was ineffective for: (1) depriving him of the right to present a defense that would have consisted of his own testimony and that of Reverend Daley, and failing to properly investigate Davey as a favorable witness for the defense; (2) failing to inform Petitioner that it was his right to testify, and advising him incorrectly not to do so; (3) failing to cross-examine the victim;[3] (4) failing to deliver an effective summation that

---

[3]      Petitioner also initially claimed that counsel was ineffective for failing to cross-examine seven other prosecution witnesses, but later conceded that since the testimony of those seven witnesses was not in dispute, counsel's decision not to cross-examine them was a reasonable strategic decision.  *See* Dkt. No. 1, Mem. at 5, 10, 18.

pointed out weaknesses in the People's case; and (5) failing to make a specific motion to dismiss the kidnapping count of the indictment.  *See* Dkt. No. 1 at 9-10; Mem. at 4-26.

> **1.     Three of Petitioner's claims are procedurally barred**.

Petitioner's claims that counsel was ineffective for failing to: (1) cross-examine the victim; (2) deliver an effective summation; and (3) make a specific motion to dismiss the kidnapping count of the indictment are procedurally defaulted.  Petitioner raised these claims, along with his claim that counsel failed to properly advise him regarding his right to testify, in his first section 440 motion.  *See* Dkt. No. 9, Ex. F. The Albany County Court denied the motion, and the Appellate Division, Third Department, granted leave to appeal that denial.  *Id.* at Exs. G-I.

The Appellate Division rejected all but Petitioner's right to testify claim because those claims pertained "to claimed errors that could have been raised in the context of the direct appeal and are therefore not the proper subject of a CPL 440.10 motion."  *Polanco*, 52 A.D.3d at 947 (citing CPL § 440.10(2)(c)(providing that a motion to vacate a conviction must be denied where, "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal

from such judgment, adequate review of the ground or issue raised upon

the motion, no such appellate review or determination occurred owing to

the defendant's unjustifiable failure to . . . raise such ground or issue

upon an appeal actually perfected [.]"). The denial of a record-based

ineffective assistance of counsel claim under CPL § 440.10(2)(c) rests

upon an independent and adequate state ground and federal review of

the claim is barred.  *See Murden v. Artuz,* 497 F.3d 178, 196 (2d Cir.

2007)("Where the basis for a claim of ineffective assistance of counsel is

well established in the trial record," as was the case here, "a state court's

reliance on subsection [440.10](2)(c) provides an independent and

adequate procedural bar to federal habeas review."), *cert. denied* 552

U.S. 1150 (2008); *Sweet v. Bennett,* 353 F.3d 135, 139-40 (2d Cir.2003)

(noting that section 440.10(2)(c) acts as an independent and adequate

state ground barring federal habeas review of ineffective assistance of

counsel claim where the basis of a Sixth Amendment issue, regarding

counsel's failure to adequately preserve an issue for appeal, involves

alleged errors well established in the trial record); *Edwards v. Mazzuca,*

No. 00-Civ. 2290, 2007 WL 2994449, at * 17 (S.D.N.Y. Oct. 15, 2007)

(claims that trial counsel failed to put forth a defense and to cross-

examine witnesses properly are record-based claims that must be raised

on direct appeal and not in a section 440.10 motion); *Alston v. Donnelly*,

461 F. Supp. 2d 112, 123 (W.D.N.Y. 2006)("the well-settled rule that

where the record is sufficient to allow appellate review of a claim, the

failure to raise that claim on appeal precludes subsequent collateral

review of the claim, applies to bar collateral review where the facts

underlying an ineffective assistance claim appear on the record.")

(collecting cases).

This Court may review these procedurally barred claims only if

Petitioner demonstrates cause for the default and resulting prejudice, or

that the failure of the federal court to review the claim will result in a

"fundamental miscarriage of justice" *i.e.*, that the petitioner is innocent.

*Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Coleman v.*

*Thompson*, 501 U.S. 722, 748-750 (1991). Neither cause nor prejudice is

apparent on the record before the Court, and Petitioner has never argued

that appellate counsel was ineffective for failing to raise these claims on

direct appeal.  Although Petitioner claims that the evidence was

insufficient to support his convictions, he has not presented any new,

credible evidence that he is "actually innocent" of the crimes for which he

was convicted.  *See Schulp*, 513 U.S. at  327; *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004), *cert. denied* 546 U.S. 961 (2005); *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). Accordingly, Petitioner's three record-based ineffective assistance of counsel claims are procedurally defaulted and habeas review of them is precluded.

### 2.      Petitioner's two remaining claims are without merit

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's performance fell below an objective standard of professional reasonableness; and (2) but for counsel's alleged errors, the results of the proceedings would have been different, and as such, petitioner suffered prejudice. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008). To satisfy the performance prong, "the record must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks omitted). In determining whether counsel's performance

was objectively reasonable, there is a strong presumption that counsel's performance fell within the "wide range of reasonable professional assistance[.]" *Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001)), *cert. denied* No. 09-7554, 2010 WL 1006134 (Mar. 22, 2010). Counsel's alleged errors fall outside the range of reasonableness only if they "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness[.]" *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003). To show prejudice, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Mazzuca*, 570 F.3d at 502. A reviewing court must determine not whether the state court's rejection of the ineffective assistance of counsel claim was correct, but whether it was "objectively unreasonable" under *Strickland*. *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006), *cert. denied* 552 U.S. 836 (2007).

Petitioner first claims that trial counsel deprived him of the right to present a defense by failing to investigate the testimony of a material

witness, Reverend Daley, whose testimony would have established that Petitioner lacked the specific intent necessary to support his conviction. Dkt. No. 1 at 9; Mem. at 5-10, 23.  Petitioner also states that Davey's affidavit "directly contradicts" Estrella's testimony on the "issue of intent" because, if Petitioner was with Davey from the early morning hours until late evening, he was prevented "from formulating the requisite intent to commit the crimes charged." Mem. at 9, 24-26.

Petitioner raised this claim in his second section 440 motion.  See Dkt. No. 9, Ex. R.  The trial court rejected it, finding that, assuming counsel knew of Davey and the substance of his proposed testimony, counsel's decision not to call Davey was strategic and did not amount to ineffective assistance. Dkt. No. 9, Ex. S. The court also found that, in the face of the proof against Petitioner at trial, counsel could have "concluded that the proposed testimony was weak, or subject to impeachment, and would not have been helpful to [Petitioner].  This is particularly so in view of the evidence presented as to [Petitioner's] intent at the time of the crime."  *Id.* at 2. That decision is entitled to AEDPA deference.

It is well-settled that "[t]he decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to

second-guess." *Laurey v. Graham*, 596 F. Supp. 2d 743, 750 (W.D.N.Y. 2009)(quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir.1998)). *See Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."), *cert. denied*, 484 U.S. 958 (1987); *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.1997) ("[T]he tactical decision of whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation."), *cert. denied* 522 U.S. 846 (1997).

Initially, Petitioner's claim that trial counsel failed to investigate Davey's testimony, or to interview him, is refuted by Davey's own affidavit, dated January 9, 2007. *See* Dkt. No. 1, Ex. A. In the affidavit, Davey states that Petitioner worked for him "from early morning until late afternoon" on the day of the shooting, and that he had dinner with Petitioner sometime between 7:00 p.m. and 9:00 p.m., and drove

Petitioner home.  Daley also states that trial counsel had this information, "both verbally and written," and that Davey offered to be a character witness for Petitioner, but that counsel "denied the need."  *Id.*  Thus, there is no factual basis to support the contention that counsel failed to interview or investigate Davey's testimony. *See Laurey*, 596 F. Supp. 2d at 749 (rejecting petitioner's claim that counsel failed to interview witnesses where the witness affidavits refuted the claim).

In any event, at best, Davey's testimony would have contradicted Estrella's testimony that Petitioner was with his co-defendants during the day of the shooting when they first began looking for the boys who assaulted Kearney. *See* Trial Tr. at 222-23. But Davey's affidavit does nothing to negate the evidence of Petitioner's intent at the time when he actually committed the charged crimes.

Petitioner's argument appears to be that he did not have intent to commit the crimes throughout the day of the shooting because he was with Davey. Premeditation, however, is not required.  *See People v. Kahn*, 15 Misc. 3d 1131A, n. 5 (N.Y. City Crim. Ct. 2007). As previously noted, the evidence supports the finding that Petitioner had the requisite intent to commit the charged crimes at the time they were actually

committed. Trial Tr. at 52-70, 224-48. Indeed, Petitioner concedes that, accepting the prosecution's theory of the case, he "became an active participant regarding Smith's fate" at least when Kearney brought the victim back to the SUV at Petitioner's direction. *See* Dkt. No. 1, Mem. at 20.  When Kearney would not shoot the victim, Petitioner took the gun, ordered the victim from the car, directed Estrella to go through her pockets and to take money while Petitioner held her at gunpoint, and ultimately fired several bullets into her head and body. Trial Tr. at 59-72, 239-48. As the Appellate Division found, this evidence was sufficient to establish Petitioner's intent to commit each of the crimes for which he was convicted. *Polanco*, 13 A.D.3d at 906. *See* Dkt. No. 9, Ex. A, Appendix at A2-11; Martinez, 2009 WL 2244633, at *6; N.Y. PENAL LAW §§ 20.00, 110, 125.25(1), 135.20, 160.15(1), 160.15(3), 120.10(1), 160.10(1), 265.09, and 265.02(4).

To the extent that Petitioner claims that counsel should have called Davey as a character witness, "[w]hether or not to call a character witness is eminently a tactical decisions [sic] that another court is not in a good position to second-guess. Absent an extraordinary showing by the petitioner, such a claim will not merit a finding that trial counsel performed

28

below the constitutional minimum." *Jelinek v. Costello*, 247 F. Supp. 2d

212, 289 (E.D.N.Y. 2003).  Petitioner has made no such showing.

The Appellate Division's rejection of this claim was not contrary to

or an unreasonable application of clearly established Supreme Court

precedent, and it is denied and dismissed.

Petitioner next claims that counsel failed to advise him of his right to

decide whether to testify. Dkt. No. 1 at 10. Petitioner states that his

testimony would have established an outline of his activities the day of

the shooting, that he did not act in concert with his co-defendants, and

that Estrella fabricated his testimony in order to obtain a favorable plea

agreement. Mem. at 24.  Petitioner further states that he believed that it

was counsel's decision whether Petitioner testify, and counsel's failure to

permit him to testify was compounded because counsel told the jury in

his opening statement that Petitioner would testify. Dkt. No. 1 at 10; Mem.

at 5, 10-18.

The right to testify is well-grounded in the Fifth, Sixth and

Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44, 51, 52 (1987).

The decision whether a defendant should testify at trial is for the

defendant himself to make, and "trial counsel's duty of effective

29

assistance includes the responsibility to advise the defendant concerning the exercise of this constitutional right." *Brown v. Artuz*, 124 F.3d 73, 74 (2d Cir.1997), *cert. denied* 522 U.S. 1128 (1998).  When a defendant claims that his counsel was ineffective for preventing him from testifying or for failing to advise him concerning the right to testify, the claim should be analyzed under *Strickland*'s two-prong test. *Id.* at 74, 79. However, a " 'barebones assertion' that his attorney told him not to testify in his own defense, even if that assertion is made under oath, has been held to be insufficient to justify a hearing or other action on a petitioner's claim that his right to testify in his own defense was denied him." *Hammouda v. United States*, No. 02-CV-3103, 2006 WL 941759 at *5 (quoting *Scire v. United States*, No. 96-CV-3446, 1997 WL 138991, *11 (E.D.N.Y. Mar. 24, 1997) (citing *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir.1991)); *Whitaker v. Poole,* No. 04-CV-00022T, 2009 WL 2901592, at *8 (W.D.N.Y. Sept. 2, 2009).

Petitioner raised this claim in his first section 440 motion.  *See* Dkt. No. 9, Ex. F.  On appeal from the denial of the motion, the Appellate Division rejected it, finding that Petitioner's claim that he was not advised that it was his decision whether to testify was unsubstantiated. *Polanco*,

52 A.D.3d at 947.  The Appellate Division further found that the record contradicts this claim: "[t]he trial transcript establishe [sic] that defendant was well aware of his right to testify, that defendant decided not to testify, and that he and defense counsel had extensive and repeated conversations about the decision to rest without calling any witnesses." *Id.*  That decision, which is supported by the record, is entitled to AEDPA deference. *See* Trial Tr. at 99 (counsel informed the court that Petitioner "has decided not to testify."); 270 ("Your Honor, at this point I wish the Court to know that I have had extensive and repeated conversations with my client.").

Even assuming, for argument's sake, that Petitioner was not advised that it was his decision whether to testify, or that trial counsel somehow prevented him from doing so, Petitioner has offered no evidence demonstrating that his failure to testify prejudiced his defense. *See Brown*, 124 F .3d at 79-81 (defendant claiming ineffective assistance due to counsel's failure to advise about personal right to testify must still establish prejudice under second prong of *Strickland* ).

Petitioner first claims that his testimony would have established that Estrella's testimony was fabricated.  According to Petitioner's affidavit, he

would have testified that during the day of the shooting, he was with Davey until approximately 8:00 p.m.; that Rosado, Kearney and Estrella were at his house shooting pool when he arrived, and told him to go with them, but did not tell him where they were going or why; that Kearney and Estrella got out of the vehicle and returned with the victim; that once Kearney, Estrella and the victim were in the back seat, Kearney told Rosado to drive; that they went to a dark street; that Kearney, Estrella and the victim got out of the vehicle; that he asked Rosado what was happening, and then heard a gunshot, followed by a few more gunshots; that Kearney and Estrella got back into the vehicle, and they drove away. *See* Dkt. No. 1, Ex. D; *See also* Dkt. No. 9, Ex. M.

Petitioner's affidavit certainly differs from Estrella's testimony, but it would have been the jury's decision what weight to give Petitioner's testimony in light of the other evidence presented at trial. *Maldonado*, 86 F.3d at 35.

Moreover, counsel may have determined that Petitioner's testimony would not have been helpful because it simply supports the defense already advanced at trial - that Kearney was the shooter, and that Estrella testified against Petitioner in order to preserve a favorable plea

agreement.  On cross-examination, Estrella conceded that Kearney was

his friend, that Estrella stayed with Kearney in the weeks before the

shooting, and that he entered into a favorable plea agreement in

exchange for his testimony against Petitioner. Trial Tr. at 253-55, 261-64.

Counsel also attacked Estrella's credibility in his summation, and argued

that Kearney was the person who put the wheels in motion the night of

the shooting, that Kearney went after the victim, and Kearney was the

only one who had a problem with the victim.  Trial Tr. at 278-80.

Petitioner's failure to testify was reasonable and, given the compelling

testimony of the victim and Estrella, there is no reasonable probability

that the outcome would have been different if Petitioner testified. Thus,

on this record, the Court cannot say that counsel's decision not to call

Petitioner to testify was unreasonable, or that Petitioner suffered

prejudice. *See Zeito v. Girdich*, 431 F. Supp. 2d 329, 334 (W.D.N.Y.

2006)("Calling a criminal defendant to testify in his behalf is one of those

strategic decisions by defense counsel that a habeas court generally may

not, with hindsight, second guess.").

        Finally, Petitioner's claim that he suffered prejudice because

counsel told the jury in his opening statement that Petitioner would testify

33

is equally unavailing. The trial court instructed the jury both before opening statements and in its final instructions that arguments made by the attorneys are not evidence.  *See* Trial Tr. at 21; 277.  The trial court also instructed the jury that the fact that Petitioner did not testify "is not a factor from which any inference unfavorable to him may be drawn."  Trial Tr. at 301. Finally, the trial court instructed the jury that

> The defendant is not required to prove that he is not guilty.  In fact, the defendant is not required to prove or disprove anything.  To the contrary the People have the burden of proving the defendant guilty beyond a reasonable doubt . . . The burden of proof never shifts from the People to the defendant.

*Id.* The jury is presumed to have followed these instructions.  *Zafiro v. United States*, 506 U.S. 534, 540-41(1993)(quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

In sum, Petitioner has failed to demonstrate either that trial counsel was unreasonable in failing to call him testify in his own behalf or how the outcome of his trial was prejudiced by his failure to testify. Therefore, this aspect of Petitioner's ineffective assistance of counsel claim is denied.

**E.      Petitioner's claim that the state court abused its discretion when denying his CPL § 440.10 motions without a hearing is not cognizable on habeas review.**

Petitioner argues in Ground Four of his petition that the trial court

34

wrongfully denied both of his section 440 motions without hearings and erroneously constructed a trial strategy to explain counsel's actions that was not offered by counsel or supported by the record.  Dkt. No. 1 at 10-A; Mem. at 4-10.

State prisoners have no federal constitutional right to post-conviction proceedings in state court.  *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Therefore, to the extent that Petitioner is challenging alleged procedural errors by the trial court in deciding his section 440 motion, including his claim that the court denied the motion without holding a hearing, those claims are not cognizable on habeas review. *Ferrer v. Superintendent*, No. 05-CV-1010, 2008 WL 2967633, at *11 (N.D.N.Y. Jul. 25, 2008)(" '[f]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.' ")(quoting *Falas v. Phillips*, No. 03 Civ. 4839, 2004 WL 1730289, at *13 (S.D.N.Y. Aug. 3, 2004), *adopted* 2005 WL 756886 (S.D.N.Y. Apr. 1, 2005)); *see Parker v. New York*, No. 05 Civ. 3347, 2006 WL 864272, at *5 (S.D.N.Y. Apr. 5, 2006)("procedural errors in state post-conviction proceedings are not cognizable on federal habeas review."); *Jones v. Duncan*, 162 F. Supp. 2d 204, 217 (S.D.N.Y. Apr. 3, 2001)(stating that

35

"habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings," and denying habeas relief on claim that trial court failed to hold an evidentiary hearing on post-conviction motions)(quoting *Franza v. Stinson*, 58 F. Supp. 2d 124, 151 (S.D.N.Y. 1999)).

In any event, under New York law, a court may deny a section 440.10 motion without a hearing where: (1) the moving papers do not allege any ground that constitutes a legal basis for the motion; (2) the moving papers do not contain sworn allegations that substantiate or tend to substantiate the existence or occurrence of all essential facts upon which the motion is based; (3) an allegation of fact essential to support the motion is "conclusively refuted by unquestionable documentary proof"; or (4) an allegation of fact that is essential to support the motion "(i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true." CPL § 440.30(4)(a)-(d).

Here, the trial court denied both of Petitioner's section 440 motions

after finding that the allegations therein did not warrant either a hearing or relief. *See* Dkt. No. 9, Ex. G, at 4 (citing CPL § 440.30(4)(d)); Ex. S at 3 (citing CPL § 440.30(4)(d)). The Appellate Division also affirmed the denial of the first section 440 motion without a hearing, citing to CPL §440.30 (4)(c) and 440.30 (4)(d). *Polanco*, 52 A.D.3d at 947. The state court actions were consistent with state statutory law. The trial court's failure to hold a hearing before denying Petitioner's section 440 motions does not constitute a denial of Petitioner's constitutional rights.

**WHEREFORE,** it is

**ORDERED,** that Petitioner's petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED**; and it is

**ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); and it is

**ORDERED**, that the Clerk of the Court shall serve a copy of this Order upon Petitioner and Respondent in accordance with the Local Rules.

June 4, 2010

United States District Court Judge